AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Vicente Loyola | ) | Case No.  13-8141-WM |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

FILED by ____ D.C.

MAR 0 7 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____February 15, 2013_____ in the county of _____Palm Beach_____ in the

___Southern___ District of _____Florida_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 952(a) | Importation of a controlled substance, namely 3, 4-Methylenedioxymethamphetamine, a/k/a "MDMA." |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Joshua Meuse, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: March 7, 2013

_____
*Judge's signature*

City and state:          West Palm Beach, Florida

United States Magistrate Judge William Matthewman
*Printed name and title*

**AFFIDAVIT**
**JOSHUA J. MEUSE**
**SPECIAL AGENT**
**DRUG ENFORCEMENT ADMINISTRATION**

I, Joshua J. Meuse, (the "Affiant"), being duly sworn, state:

**INTRODUCTION**

1.      I am an Investigator or Law Enforcement Officer of the United States within the

meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who

is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18,

United States Code, Section 2516.  I have been a Special Agent (SA) with the Drug Enforcement

Administration (DEA) since March 28, 2010.  I am currently assigned to the DEA West Palm Beach

Resident Office.  Prior to my employment with DEA, I served as a Police Officer with the Gloucester

Police Department in Gloucester, Massachusetts from December 2004 to December 2005.  I am

currently assigned to investigations dealing with all aspects of importation, manufacturing, and

distribution of illegal drugs, to include 3,4-Methylenedioxymethamphetamine, a/k/a "MDMA," a/k/a

"Molly," 4-Methyl-N-Ethylcathinone, a/k/a "4-MEC," a/k/a "Molly," Methylone, 3,4-

Methylenedioxymethamphetamine, a/k/a "M," cocaine, and marijuana.

2.      While employed with the DEA, I have received ongoing training to include classes in

Basic Telecommunication Exploitation, Internet Telecommunication Exploitation and Wire and Oral

Telecommunication Interceptions. As a SA with the DEA, I have conducted investigations of, and

have been instructed in investigative techniques, concerning the unlawful distribution of illegal

narcotics, possession with intent to distribute controlled substances, importation of illegal narcotics,

use of communication facilities to conduct illegal narcotics transactions, maintaining places for

1

purposes of manufacturing, distributing, or using controlled substances, and conspiracies to commit these offenses, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 856, 846, 952, and 963, respectively.  Based upon this experience, and through the experience of other agents and detectives with numerous years of experience, I have also become well versed in the methodology utilized in illegal narcotics trafficking, the specific type of language used by illegal narcotics traffickers, and the unique patterns employed by narcotics organizations.  I have also conducted physical surveillances, electronic surveillances, and wire surveillances.  Additionally, I have arrested individuals for various drug violations and have spoken with a number of drug dealers, drug users, and informants concerning the methods and practices of drug traffickers.  As a result of my law enforcement experiences, and the experience of other agents and detectives I have worked with in dealing with drug traffickers, I have found that they rarely speak openly about their illegal narcotics transactions.  Instead, they use coded language to disguise their conversations about illegal narcotics transactions and also frequently communicate via text messages.  I am also aware that cellular telephones provide illegal narcotics traffickers with mobile access and control over their illegal trade.  They often utilize cellular telephones to communicate with one another in furtherance of their illegal narcotic activities via voice, text, and e-mail message communications.  I also know that illegal narcotics traffickers routinely utilize false information when registering their cellular telephones and utilize cellular telephone numbers and cellular telephones for short periods of time.  I have also conducted investigations involving the identification of co-conspirators through the use of telephone records and bills, electronic mail and digital media, financial records, drug ledgers, photographs, and other documents.

     3.     The information contained in this affidavit is based on my personal participation in

this investigation, from information provided to me by other agents and analysts for DEA and other federal, state and local law enforcement agents and officers, as well as cooperating sources of information. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint for Vicente LOYOLA, I have not set forth every fact known to me regarding this investigation. Rather, I have set forth only the facts I believe are necessary to establish probable cause for the arrest of Vicente LOYOLA for the offense of Importation of a Controlled Substance, namely 3,4-Methylenedioxymethamphetamine, a/k/a "MDMA," a/k/a "Molly," a/k/a "M," in violation of Title 21, United States Code, Section 952(a).

## FACTS IN SUPPORT OF PROBABLE CAUSE

4.     DEA is currently conducting an investigation of the illegal drug trafficking activities engaged in by a number of individuals responsible for the importation and distribution of controlled substances, namely, 3,4-Methylenedioxymethamphetamine, a/k/a "MDMA," a/k/a "Molly," a/k/a "M" (hereinafter referred to as MDMA). Specifically, this organization ships powdered MDMA in factory sealed creatine[1] containers from Canada into the United States for further distribution throughout the United States. On December 21, 2012, law enforcement agents seized approximately 500 grams of a tan powdery substance in West Palm Beach, Florida. The suspected MDMA powder was later field tested and yielded a positive result for the presence of MDMA. Following the seizure of the 500 grams, the individual from whom the 500 grams were seized agreed to cooperate with law enforcement and is hereinafter referred to as the CS.

5.     Following the CS' agreement to cooperate with law enforcement, he/she told law that he/she had ordered the 500 grams of MDMA powder from a Canadian source of supply by the

---

1 Creatine is a weight lifting supplement.

3

name of Vicente LOYOLA (hereinafter referred to as LOYOLA) who informed the CS that the powder was "pure MDMA." The CS stated that the CS would communicate with LOYOLA via Facebook or cellular telephone (calls and/or text messages). The CS provided law enforcement with the telephone number for the cellular telephone used by the CS to communicate with LOYOLA. The CS also positively identified LOYLA as the source of the 500 grams of MDMA through the photos obtained via Facebook. The CS also provided law enforcement with the Bank of America account number LOYOLA had previously provided the CS to be used when purchasing the powdered MDMA. Law enforcement agents have been able to verify that that account number is listed in LOYOLA's name.

6.      Thereafter, a number of monitored and recorded conversations were made between the CS and LOYOLA utilizing the same telephone number provided by the CS. During these recorded conversations, the CS and LOYOLA discussed a future sale of an additional half kilogram quantity of MDMA powder. Specifically, on January 7, 2013, the CS called LOYOLA. During the conversation, LOYOLA told the CS to deposit the payment for the half kilogram of MDMA into LOYOLA's Citi Bank account instead of his Bank of America account because the Bank of America account was "too full." LOYOLA subsequently provided the CS with the Citi Bank account number.

7.      On February 7, 2013, agents acting in an undercover capacity, wire transferred $7,000.00 in U.S. currency into the Citi Bank account provided by LOYOLA for the purchase of the half kilogram of powdered MDMA. After the transfer was complete, the CS called LOYOLA to tell him that the money had been deposited into the account. During the conversation, LOYOLA acknowledged the deposit and told the CS that he (LOYOLA) would ship out the MDMA the following day.

4

8.      On February 8, 2013, the CS received a text message from LOYOLA using the same telephone number as that noted above and used to make the controlled telephone calls. The text message contained a USPS tracking number for the package containing MDMA. Law enforcement agents queried the tracking number which revealed that the package originated in Canada, went through a Vancouver sorting facility, and had made its way into the United States.

9.      On February 13, 2013, LOYOLA contacted the CS utilizing the same telephone number and told the CS that he (LOYOLA) was going to ship the CS an additional half kilogram of powdered MDMA. LOYOLA told the CS that he would retrieve the money for the MDMA when LOYOLA visited Florida in the next few weeks, but wanted the CS to be able to sell the MDMA in the meantime. On that same day, LOYOLA provided the CS with the tracking number for a second package of MDMA.

10.     On February 15, 2013, the first package of MDMA which originated in Canada arrived in West Palm Beach, Florida located within the Southern District of Florida. Agents recovered the package and opened the package at the Postal Facility. Contained inside the package was a factory sealed creatine container containing approximately 622 grams of a tan powdery substance. The suspected MDMA was field tested and yielded a positive result for the presence of MDMA. The CS later contacted LOYOLA and told him that the CS had received the package.

11.     On February 20, 2013, the second package arrived in West Palm Beach, Florida. On February 22, 2013, agents recovered and opened the package. Contained inside the package was a factory sealed creatine container containing approximately 597 grams of a tan powdery substance. The suspected MDMA was field tested and yielded a positive result for the presence of MDMA. Also, contained in this package was a packing slip from "Popeye's Canada."

5

12.     During the week of March 1, 2013, several recorded and monitored calls were made between the CS and LOYOLA.   During these conversations, LOYOLA stated that he would be flying to South Florida on March 7, 2013, to retrieve the money from the CS for the second package of MDMA.  LOYOLA told the CS he was planning on staying in Florida for about a week for spring break and possibly the "UltraFest."  Law enforcement agents have learned that "Ultrafest" is a rave style party that lasts several days.  Law enforcement agents have confirmed that LOYOLA is scheduled to arrive in Miami, Florida on March 7, 2013, at approximately ~~4:00~~ 10:45 p.m. on Delta flight 1579.

WHEREFORE, based on my training and experience and the facts as set forth in this affidavit, I believe that there is probable cause exists to believe that Vicente LOYOLA has committed the offense of Importation of a controlled substance, namely 3,4-Methylenedioxymethamphetamine, a/k/a "MDMA," a/k/a "Molly," a/k/a "M," a Schedule I controlled substance into the United States, in violation of Title 21, United States Code, Section 952 (a).

Joshua J Meuse, Special Agent
U.S. Drug Enforcement Administration

Sworn to before me this
7 th day of March 2013.

WILLIAM MATTHEWMAN
U.S. MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.:  13-8141-WM

UNITED STATES OF AMERICA

vs.

VICENTE LOYOLA,

        Defendant.

_____/

## CRIMINAL COVER SHEET

1.     Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2.     Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY:    _____

Jennifer C. Millien
Assistant United States Attorney
Florida Bar No. 171700
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401
TEL: (561) 820-8711
FAX: (561) 805-9846